121-1574 W.C. Jacqueline Macdonnell-Dayhoff, Appellant by Michael Rahm v. Illinois Workers' Compensation Comm'n, Western Springs Police Department, Appalachia, by Patrick Jesse. Thank you. Mr. Rahm, you may proceed. Thank you, Your Honor. May it please the Court, Mr. Jesse, my name is Mike Rahm. I represent the appellant in this matter, Jacqueline Macdonnell-Dayhoff, who is a crossing guard for the City of, Village of Western Springs. She also has a second job within the actual Village Hall. I'm here today to ask you to reinstate the decision of the Illinois Workers' Compensation Commission as it was not against the manifest weight of the evidence. Counsel, before you get into the facts, can I give you a little tip on brief writing? You've got a bad caption on the case. The caption on the case should be Western Springs versus the Workers' Compensation Commission, but Western Springs being the appellee, not the appellant. The rules require you to use the caption from the circuit court, and the caption at the circuit court was Western Springs versus IWCC. You just have the parties mixed up in the caption. In the future, just take a peek at what the caption is in the circuit court and use that as the caption on appeal. Will do, Your Honor. Thank you very much. Go ahead. Again, I'm here to ask you to reinstate the decision of the commission as it wasn't against the manifest weight of the evidence. The commission was called upon to draw certain inferences from the facts in this case to determine that the petitioner in this case was in the course of her employment. That's what this case really is, an in-the-course-of case. The number one factor that they addressed initially was that this individual had completed her commute to work. That's very obvious. She arrived, pulled into a parking area that the village police officer terms as the commuter parking apron, and she turns off her key. She opens the door. She exits the car. She slips on ice that is hidden under a layer of snow. We understand the facts. Let's get to the nub of the issue. Sure. For it to be in the course of the employment under these circumstances, the fall would have had to have taken place on the premises of the employer. Now, we're dealing with a municipality. This municipality owns all the streets in Western Springs, owns all the parking spaces in areas that they control. So the question is, for the purpose of recovery under the act, what is the premises when dealing with a municipality? Well, in this case, I understand that the whole village is their premise, but in this case, they make a specific finding here to provide her with the parking in these parking lots. Counsel, they didn't provide her with anything. There were parking lots behind the building. The only thing they did do, and we'll get to that question in a minute, is if an employee parked in the spot, they wouldn't enforce the four-hour rule and issue a ticket. They didn't provide it, and they didn't tell her to park there. But my question is more basic. When you're dealing with recovery under the act as against the municipality, what is the premises to determine whether an accident takes place in the course of it? Is it any piece of their property at all? That would depend on the individual's job. So do we agree that the premises as against the municipality for comp must be some property of the municipality that has a relationship to the duties of employment? Yes. We agree on that? Okay, go ahead. Yeah, and in this case, because she's a crossing guard, her job's in the street. The only reason that she's been parking in that spot, and I would still say she's being provided with it because they had to make an exception for her and the other couple of employees that they allow to park there, but she's parking there to get to her corner. She has to be somewhere to get from point A to point B. If her only job was her second job, which is in the village hall, if that was her only job and she parked in front of her favorite coffee shop and walked, well, that would have no nexus to the job that she's performing. My question is, if she's a crossing guard, we know she's got to be on a corner somewhere. So it isn't your theory that regardless of where she parked on a public street, that that would be the premises of the employer for determining recovery under the act for it? No, the commission found that they inferred in this case, she parked in a spot that she was allowed to park in, that's owned, maintained, and controlled by the village, and that they make exceptions for her to be able to park there, that she had completed her commute at that point in time. They inferred that so that she could get from point A, her car, to point B, where she's going to be helping kids cross the street. But counsel, isn't it true the parking space that she parked in and then fell was available to the general public? Anybody could have parked there, correct? For four hours, yes. All right, well, let me get back to the basic. Let me get back to the basic. So your entire argument of in the course of has to be parking area akin to having been provided by the employer? No, no, I don't even think we need to get to that. The minute that the commission decides that she's completed her commute, and she's making a motion to get the equipment, and she needs to do her job, and we accept that her job is in the street, in my opinion, we've already satisfied the in the course of that then counsel, you would have to take the position that it didn't make any difference where she parked as long as she was getting out of her car, and she was on a public street owned by Western Springs. Oh, because if she parked 30 blocks away in front of her favorite coffee shop, the case would be different. She's getting out of her car to go to her place of employment. What if she parked a half a block away from her car? Or yes, of course, then it's adjacent to her car. Yes, absolutely compensable, because again, it has a nexus to her job, her unique job, that being a crossing guard. And if she wasn't a crossing guard, I'd have a problem with all that. And that's my whole point. It doesn't open the village up to a billion claims and make the whole place compensable. It's got to be what is her job? Why is she there? Is it have anything to do with her getting to her corner and completing the job? What is the nature of her job? How does that determine whether or not it's on the village's premises? So she works in the street in the she works in the village's premises, pointed out the entire village property is owned by them. That's correct. But there's got to again, if she's 30 point B, and during the time she's getting from point A to point B, isn't she covered under the workers compact? Certainly the commission thought so. There's a there's a nexus with where she's parking and what she's doing to get to that corner. She's not just anywhere in the village. I think I'd have a big problem if she was parking in the Walmart to go to Walmart, and then walk Walmart. Walmart is not the village. If she was on the street, and on a village street, 30 blocks away, right, I'd have a problem. But how close then how close then would you include within the village premises to the corner she worked at, for purposes of recovery under the act? 100 feet, 200 feet? 500 feet? That that's the irony. How do how do we determine that? I where did where was she allowed to park to get to that corner? Does her parking out there have anything to do? So we're not the fact that it's a village street is irrelevant. Your entire argument has to be based on the notion that the angled parking space becomes a an authorized parking area provided by the village, merely because they waive the four hour restriction for her and other employees. It becomes a parking lot case. Well, it becomes a parking lot case only because they're there. They are providing it and allowing and if you look at the case law, what is was it talk about? She regularly uses this. It's customary. They have knowledge of it. They allow it they have to do something active. That being waving. I know this idea that they're waiving this four hour limit is is being poo pooed. I think it's very important because no one else can do that. And the only reason they do that is to allow her. It's to their her advantage because she's closer to her corner. It's also has to do the job. It's easier for her to do her job for the village, which is help kids cross the street. So, you know, I think it's very specific to what she does and I think it's important that they acquiesce. Mr. Rob, let's let's let's say the village of Western Springs says, okay, her job, we all agree is on this corner. Okay. Right. Yes, there's this angled parking. Now, apparently, they're saying if they know it's her car there and it's over four hours or whatever, they're just not going to ticket it. Right. Right. Okay. What if they put a sign in front of an angled parking that says no parking between the hours of whatever her hours are? Okay. Reserved for claimant, claimants or whoever is performing claimant's duty. Well, I think that just I just think that makes the case stronger. Okay. That's all I wanted to ask then in your because I'm trying to get you to kind of clarify for me anyway. So, you're saying that in effect that is constructively what they've done. Absolutely. Because she couldn't just do it on her own. Because of why? Because they ticket her every single day. Okay. Thank you. And they wouldn't know. That's fine. Thank you. And at some point, it becomes customary that she parks there. And I think there's testimony from the police officer where he says, I know that's her car. I know that but initially, she has to get their blessing to be there. She has to be allowed to be there. Otherwise, she's she's got a big problem. Their blessing is they're not going to with her. Because if she parks in a different lot with the same restrictions and doesn't tell them and doesn't get their permission, she she's going to have a problem. She's going to get ticketed or towed or do whatever. So, they they've made this an area and it's not just her. The testimony is there's some other employees that are allowed to do this. Counselor, haven't you conceded that the parking lot where the claimant fell was not designated for use by village and no one from the village ever told her to park there. Is that correct? I don't know if they know they didn't instruct her to park anywhere. No one's instructed to park anywhere. So, the fact that they allow her to and change the rules for her is yeah, they're not making her park. She's parking there because it's easier to do her job. It wasn't designated for her. There's four or five employees allowed to park there. They don't have specific spots but there's four or five employees that they've changed the rules for to allow them to use this lot for purposes of, in her case, purposes of her job and to accomplish the tasks of her job. Is it a lot or is it a public way that has angled parking? I think anyone that's been to a train in the suburbs, you have these angled parking up against the commuter rail. I know what angled parking is. Yeah, there's a bunch of spots there. So, I use the term that the police officer, it's a commuter parking apron where people park. There's multiple cars parked along there. And I think in my brief, I used the example. I don't know if that matters. If they bend the rules to allow somebody to park somewhere and I use the example of a grassy knoll. Let's be clear about something. They didn't suspend the rules and allow her to park there. That parking space is open to any member of the general public, including her. So, they didn't allow her to park there. What they did was they would not enforce their ordinance limiting it to four hours. It has nothing to do with allowing her to park there, anybody to park there. No, but they bent their rules for a reason and that is to accomplish the tasks that they hired her for getting to the corner and getting kids across the street safely. I don't think there's any evidence as to why they did it. There's just evidence that they did do it. He testified that she does it because it's closer to her corner and easier to get to the corner. And no one rebutted that or said, you know, that the only testimony from the village was we let a few people do that. Council, I know we may be asking too much. I take it you have no case law that says that by declining to enforce the four-hour commuting parking limitation, converts this into a premises provided by the village. You don't have any case law to support that, do you? No, but I think that this case fits into the case law in the sense that the cases concerning parking lots talk about providing parking and that the area they provide is owned, operated, controlled by the employer. Yeah, but your argument doesn't hinge on providing. Your argument hinges on the waiver of the right to ticket her. Well, I think that you've already established they didn't designate this as a parking space for the employees. That's already been established. But they designated her allowance to park there as opposed to other people and other employees. They differentiate. The public could have parked there too. Only for a limited amount of time, not for the time that she parks there, which is her entire workday. So, again, we're back to the waiver. Your argument hinges on the village allegedly providing it by not ticketing her. It turned it into a premises case. Well, it is their premises and yes, it does because they're making an exception because of her job duties to allow her to be there. By not ticketing her, anyone can park there. The Justice Department says what evidence is there to establish that in this record? She had to go in and get permission to do this and put in her license to do this. She had to make an active step and they had to make an active step to allow her to be treated differently than the general public and just anybody or any other employee. She had to be provided with that permission to go there. She wasn't different than any other employee. The testimony in this record was other employees were given the same benefit. Four or five, correct. Yeah, it wasn't exclusive to her. Yeah, no, there were four or five. I think that makes it even stronger. They're extending that for people that, in her case, have a reason to be there because of their job. And there's even testimony there that how safe the employee parking lot is, yet they still allow her to be out there where they claim they don't clean it as much. So, you know, they've acquiesced in her being where she's at. If we don't want to say they provided, they certainly had to acquiesce in it and they had to have knowledge because otherwise she'd get ticketed every day. So she's being treated differently than any other human being other than the four or five employees that have permission to park in that way. You've made that point before, okay. Your light's been on for a while, Mr. Romer. Sorry, I'm sorry. But you will have time in reply. Thank you. Mr. Jesse, you may respond. May it please the court, counsel, Patrick Jesse, on behalf of the Village of Western Springs. You know, the last time I was before this panel was four years ago, almost to this date. And I was arguing another parking lot case. And in that case, I was asking you to treat wet snow similar to the Dukic case in terms of precipitation. I was asking you to modify how we treated compensability. Pursuant to prior cases today, I'm not asking you to modify anything. I think we just need to apply the parking lot exception, the second exceptions to the general premises rule, as we always have. You know, there was some discussion towards the end of counsel's argument about case law. I mean, there is no case that has ever expanded the parking lot exception as the commission did in this case. Justice Hoffman, you mentioned, well, where do we expand the premises? Where does it stop? 100, 200, 300 feet? Counsel, I asked the question, but it was almost rhetorical. I understand. The issue in this case is a simple issue. Was the fact that they waived or did the fact that they waived the four hour rule on the use of this space for this petitioner transform what was otherwise a public parking space into premises of the employer provided to the petitioner for parking? That's the issue. It's no more complicated than that. The rest of this stuff is all red herrings. Justice Hoffman, I agree. I think that's the issue in the case. And I would say, no, that doesn't translate it into an employer provided lot. And why is that? She has no more right to park in that space than anyone else in the general public. The four hour waiver, I don't think that does. One, I've never seen a case where that's translated into an employer provided lot. But let's say she gets there that day and the commuter parking lot's filled. Village doesn't have any right to kick somebody out of that space. I mean, all this waiver issue, this wasn't done for any benefit of the employer. There was no testimony or evidence that it helped her do her job. I mean, she could have easily parked in the two designated employer lots behind the Village Hall and walk to her corner to do her crossing job. She parked there out of convenience. She didn't have to get, I disagree with counsel's argument that she had to get special permission. They knew her license plate because her license plate had her name on it, Jackie. And she worked there for 18 years. They knew it was her car. I don't think the, I think the commission's reliance on the waiver of the four hour limit and finding that this is an extension of the employer's promises. I believe that's contrary to law. I believe that's misplaced. I think the evidence is clear in this case that where she fell was not the employer's promises, under the exceptions to the general promises rule. I would ask that- This boils down to one sentence of the Supreme Court in the Hoyas. And that sentence says, whether the employer owns or does not own the parking lot is immaterial. So long as the employer has provided the parking lot for its employees, is the waiver of the four hour rule equal to providing the space for the employee? That's the question. On that one line. And the answer is no, because the provided lots are behind the Village Hall. We know that. That's the employee designated lot. Those are the lots that are controlled by the Village. They can prevent people from the general public from parking there. You know, all this is is just a waiver of convenience. They don't want to be ticketing their employees. I mean, I wish I had, I tried to find some similar cases that would say this, this doesn't amount to it. The closest one I could come up with was the Joiner decision. But that was parking in a lot that wasn't owned by the employer. I think in that case, the Will County clerk gave reimbursement to employees for parking. And the court said, well, that wasn't enough to constitute an employer provided lot. So the facts were somewhat different. Yeah, I mean, my position is this did not constitute an employer provided lot when we apply the common sense framework of the parking lot. Well, isn't Joiner really? I mean, as you would argue that that's your case, isn't it? I think Joiner helps. I just wanted to be fair in saying that, you know, they didn't, the employer in Joiner was the Will County circuit clerk. Well, I know we know all those facts, but let's go above all of the granular minutia. You have a county employee that can use a public lot with no consequences in the sense of having to put money in a meter. You're asking in that case or this? I'm sorry, Justice, I wasn't. Well, you were the one that brought the facts up. You're talking about the Joiner, the Will County case. You're saying that under the facts of that case, that the Will County clerk was basically paying for the employee to stay in that lot without any consequences of non-payment of money and getting ticketed. Right. Those are facts in that case, yes or no? Yes, they reimbursed them. Well, that's the same basic concept. Right. Okay. And I'm illustrating that this court did not find that that constituted, that that act constituted an employer-provided lot. So I'm arguing similarly to the four-hour waiver. I don't have really much more today other than I would, well, if there's any additional questions, but. So have you specifically addressed Mr. Ram's position that by declining to enforce the four-hour commuter limitation, it somehow transmuted the parking lot into a lot designated for the employee? What about his fallback position? I don't think he gets to that unless you find that it's premises. I don't, because she testified that she had just gotten out of her car and stepped up. She did not grab her crossing guard. She did not perform any affirmative acts in furtherance of her employment. I don't think you get to compensability unless Mr. Ram convinces you that that's the employer's premises and that she slipped on snow or ice, excuse me, on premises. I mean, that's, I don't think you get to that second position at all. And since it was clearly not designated for employees, you're saying that's the, that ends the inquiry right there. Yeah. My position would be that once they established that she didn't fall in one of the two lots that the employer provided, that was the end of the case. Let me pose a question for you. Assume that an employer has a parking lot that it owns and it maintains, that's open to the general public, and the employer tells its employees, you can park in that lot. It's okay to park in that lot.  And if the lot is full with customers, there'd be no spots for the employees. But an employee does park in that lot and is injured because of some defect in the lot. Is that a compensable accident? It sounds to me like you're describing the Morris Harvey case. Yeah, exactly what I'm describing. That was compensable. Certainly it's compensable. The fact that the employee may not be able to park there because the lot is occupied by customers doesn't change the fact that the employer has provided the lot for the employees for a parking lot analysis. So the question for me just boils back down to a simple question. Is the waiver of the four-hour parking restriction equal to providing the space to this petition? For any of their employees, providing it to their employees. Yeah, and again, I would respond the same way and I agree that's really the issue. Is that enough? Is that enough for an employer-provided lot? I would say no. Not when they've had, and arguably not under these circumstances, when there's two other lots available that are designated. I mean, I think we just, we look at the case, she parked there out of convenience. I don't have anything more today. I would ask that you affirm the circuit court decision reversing the decision of the commission. And thank you for your time. Thank you. Thank you, Mr. Jesse. Mr. Rahm, you may reply. So just briefly, I think she is in that lot for the employer's benefit because it's closer to her corner. As far as the Joyner case goes, I think Joyner's distinguishable because the employer didn't own the lot. I think it was somebody else's lot, which is what we see in these cases where people are parking on premises not owned by the employer. And that's not the case here. So, I mean, I agree with the commission due to that inference that the waiver of that, their rules in that lot turned it into their premises for purposes of her job as a crossing guard. So I'd ask that the commission decision be reinstated. Thank you. Okay. Thank you, Mr. Rahm. Thank you, Mr. Jesse, for your arguments in this matter.